[No. 3968.]

C. C. BAKER v. THE STATE.

1. OBSTRUCTING PUBLIC ROAD—TERM DEFINED.—"Wilful," in statutory parlance, means with evil intent or legal malice, or without reasonable ground for believing the act to be lawful. In order to authorize a conviction for obstructing a public road, it must be made to appear that the act was *wilfully* done.
2. SAME—FACT CASE.—See the opinion and the statement of the case for evidence *held* insufficient to support a conviction for wilfully obstructing a public road, in as much as it fails to show that the act was wilfully done.

APPEAL from the District Court of Bexar. Tried below before the Hon. G. H. Noonan.

The conviction in this case was for wilfully obstructing a public road, by fencing on the same. The penalty assessed against the appellant was a fine of eighty dollars.

The State proved, by the records of the commissioners' court, that the road described in the indictment was a first class public road, and that it was laid out in compliance with the requirements of law, under the following circumstances: The defendant and Walter Beck owned adjoining tracts of land. The defendant and others, in September, 1878, petitioned the commissioners' court to lay out a first class public road, sixty feet wide, on the line between the defendant and the said Beck. The road was accordingly ordered to be laid out, thirty feet on the land of defendant and Beck, respectively, damages in the sum of eighty dollars being allowed to defendant and the same to Beck. After the promulgation of the order establishing the road, the defendant and Beck entered into the agreement evidenced by the following letters:

"To the Honorable County Commissioners' Court; Thomas A. Dwyer, presiding:

"GENTLEMEN: Should you agree to establish the road on the land of Walter Beck, as agreed by him, the amount allowed me for moving my fence you are authorized to pay to him, and I agree to turn the northwest corner of my fence in to where the road stikes the fence, and make a gradual turn.

"C. C. BAKER."

"To the Honorable County Commissioners' Court; Thomas A. Dwyer, presiding:

"GENTLEMEN: At a term of your honorable court, a jury of review was appointed to review a road from the Wilson county line, known as the old Gonzales county road. Said jury agreed on a line between C. C. Baker and the undersigned, both lands being enclosed. Mr. Baker gave the right of way, the county to pay him for moving his fence. I entered a protest. A jury was appointed by your honorable body to assess damages for and against. The jury allowed to C. C. Baker eighty dollars for removing his fence, and me the same amount of damages. I have now agreed with C. C. Baker to give the right of way for the whole road through my land, and let his fence stand. He gives me the amount that the county allowed him for moving his fence.

"Respectfully,

"WALTER B. BECK."

The said agreement between Baker and Beck was ratified and approved by the commissioners' court, and the road was laid out in accordance with the same, in the presence of the defendant.

J. W. Light testified, for the State, that he was road overseer when the road described in the indictment was cut out and opened. It was opened entirely upon Beck's land, in accordance with the agreement between Beck and defendant, approved by the commissioners' court. It extended in width sixty feet from defendant's fence, on Beck's land. The road lay for three years as it was originally cut out. In June, 1883, the defendant moved his fence forward about fifteen feet into the road, obstructing it to that extent. That obstruction still remains. It was understood, when defendant and Beck entered into their agreement, that the defendant should have the right to straighten and otherwise alter and reconstruct his fence.

Walter Beck testified, for the State, that he owned a tract of land adjoining the tract owned by the defendant. When the road was first ordered laid out, one-half on the land of witness, and one-half on defendant's land, there was a dispute pending between witness and defendant as to the boundary line between them. Witness agreed with Baker to take the eighty dollars damages allowed him, Baker, and give the entire right of way over his land, from Baker's fence, that fence henceforth to be recognized as the boundary line between them. The agreement

was approved by the commissioners' court, the damage money was paid to the witness, and the road was opened in accordance with the agreement. The road remained as laid out for about three years, when Baker moved his fence forward, about fifteen feet, into the road, where it still remains, obstructing the road to that extent. It was understood between witness and Baker that Baker's fence should mark the dividing line between their respective lands, and that the road was to run to Baker's fence. The State closed.

D. Donaldson and S. Locke. civil engineers, testified, for the defense, that they had surveyed a line between two large stones said to mark corners of Baker's land. That line was surveyed as the line between Baker and Beck. The fence erected by Baker, and said to be the fence mentioned in the indictment, was within the said line. Neither of the witnesses ran out the road, and neither of them knew, as a matter of fact, what the two stones were placed in their respective positions to represent.

Mr. Conway testified, for the defense, that he helped survey the road described in the indictment. It was first surveyed thirty feet on the land each of Baker and Beck. Under an agreement between Baker and Beck, it was subsequently run out entirely on Beck's land. The fence, as it now stands, is about twenty-five feet on the road, as it was run out previous to the agreement between Baker and Beck, and in some places it was about five feet in the road as it was run out after the said agreement between Baker and Beck. Baker's fence, as it originally stood, was crooked in places. In changing it, he straightened it.

George Benneoke testified, for the defense, that he was road overseer of the road alleged to be obstructed, at the time of the alleged obstruction. When witness discovered Baker making his fence, as it now stands, he, witness, went to see the county judge about preventing Baker from so building his fence. The county judge said that, under his agreement with Beck, Baker was authorized to build his fence as he was then building it, and that witness had no authority to remove it. Witness told Baker what the county judge said to him. Witness took no steps to prevent Baker from completing his fence, or afterwards to remove it.

The motion for new trial raised the questions discussed in the opinion.

*John H. Copeland* and *Thomas H. Franklin,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. This appeal is from a judgment of conviction for obstructing a public road, and in our opinion the evidence, as disclosed by the statement of facts in the record, wholly fails to support the verdict and judgment. Under an agreement between this appellant and one Beck, and which agreement was sanctioned and ratified by the commissioners' court of the county, and in consideration of which Beck was paid the sum of eighty dollars, the road was to be located entirely upon Beck's land, and no portion of appellant's land was to be taken or used in the construction of said road. In straightening his fence appellant never went beyond the line of his own land.

To render a party liable, under the statute, for obstructing a public road the act must have been done "wilfully" (Penal Code, Art. 405); and the word "wilful," as used in the statute, means with evil intent, or legal malice, or without reasonable ground for believing the act to be lawful. (Thomas v. The State, 14 Texas Ct. App., 200; Schubert v. The State, 16 Texas Ct. App., 645; Trice v. The State, 17 Texas Ct. App., 743; Loyd v. The State, 19 Texas Ct. App., 321.)

The judgment is reversed and the cause remanded.

*Reversed and remanded.*